IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| AEQUOR MGT, LLC and | § | |
| AEQUOR HOLDINGS, LLC, | § | CASE NO. 23-60010 |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

## DEBTORS' MODIFIED AMENDED JOINT
## NON-CONSOLIDATED PLAN OF LIQUIDATION

Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

**ATTORNEYS FOR THE DEBTORS-IN-POSSESSION**

**DATED: FEBRUARY 2, 2024.**

Aequor MGT, LLC and Aequor Holdings, LLC hereby propose the following *Joint Modified Amended Non-Consolidated Plan of Liquidation* pursuant to the provisions of Section 1121 of the Bankruptcy Code:

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1   <u>Rules of Interpretation</u>.

(i)   Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time. Words denoting the singular number shall include the plural number and *vice versa*. In construing this Plan, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

(ii)   In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

(iii)   Where a creditor or holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor.

1.2   <u>Definitions</u>. Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

"**Administrative Claim**" means a Claim for any cost or expense of administration of the Bankruptcy Case under Section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim. For the avoidance of doubt, Administrative Claims do not include Secured Property Tax Claims.

"**Administrative Claims Bar Date**" means the day that is thirty (30) days after the Effective Date.

"**Administrative Tax Claim**" means any *ad valorem* tax claim assessed against, or payable by, the Debtors or the Estates or their property for or on account of a period after the Petition Date, specifically excluding Secured Property Tax Claims.

"**Aequor Holdings**" means Aequor Holdings, LLC, a Texas limited liability company.

"**Aequor MGT**" means Aequor MGT, LLC, a Texas limited liability company.

"**Allowed**" as it relates to any type of Claim provided for under this Plan, but excluding a Professional Claim, means a Claim:

(i)      which has been scheduled as undisputed, noncontingent and liquidated in the Schedules in an amount other than zero or unknown, and as to which:

        a.  no proof of Claim has been timely filed; and

        b.  no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline);

(ii)     as to which a proof of Claim has been timely filed and either:

        a.  no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); or

        b.  such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court;

(iii)    which has been expressly allowed under the provisions of this Plan; or

(iv)    which has been expressly allowed by Final Order of the Bankruptcy Court.

"**Allowed Administrative Claim**" means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; or (ii) an Administrative Claim which: (a) is incurred by the Debtors after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (b) is not disputed by the Debtors; and (c) does not require approval from the Bankruptcy Court to become Allowed.

"**Allowed Priority Claim**" means a Priority Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Secured Claim**" means a Secured Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Unsecured Claim**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

"**Avoidance Actions**" means any and all rights, claims or actions which the Debtors may assert on behalf of the Estates under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

"**Bankruptcy Case**" means Bankruptcy Case No. 23-60010 in the Bankruptcy Court, which are the jointly administered bankruptcy cases of Aequor MGT, Case No. 23-60010 in the Bankruptcy Court and Aequor Holdings LLC, Case No. 23-60011 in the Bankruptcy Court.

"**Bankruptcy Code**" means 11 U.S.C. §§ 101, *et. seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

"**<u>Bankruptcy Court</u>**" means the United States Bankruptcy Court for the Eastern District of Texas, Tyler Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**<u>Bankruptcy Rules</u>**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

"**<u>Bar Date</u>**" means May 5, 2023 for Claims of persons other than Governmental Units, and July 5, 2023 for Claims of Governmental Units.

"**<u>Burro Mine</u>**" means approximately 5,547.4 acres of land and any improvements or fixtures thereto located at 3401 East FM 2185, Van Horn, Texas.

"**<u>Business Day</u>**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**<u>Castlelake</u>**" means CL V Funding, LLC.

"**<u>Castlelake Claims</u>**" means all claims, rights, liens, security interests, and rights to payment, arising at any time prior to the Effective Date, including all assertable interest, fees, and other charges, against the Debtors or the Estates, including under that certain credit agreement dated November 7, 2018, and under that certain security agreement dated November 7, 2018, that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, Fixture Filing, and Financing Statement effective November 7, 2018, and any guarantee thereof, and further including as asserted in Claim Nos. 3 and 4 filed against Aequor Holdings and Claim No. 16 as filed against Aequor MGT.

"**<u>Castlelake Secured Claim</u>**" means the Castlelake Claims, to the extent secured by valid, perfected, and unavoidable liens and security interests in and to property of the Debtors and the Estates.

"**<u>Causes of Action</u>**" means all claims and causes of action of the Debtors and the Estates arising, accruing, existing, or assertable prior to the Effective Date, including, without limitation, the Avoidance Actions and the Proterra Causes of Action.

"**<u>Claim</u>**" means a claim against one or more of the Debtors, the Estates, and/or property of the Debtors or the Estates, as such term is otherwise defined in Section 101(5) of the Bankruptcy Code, and arising at any time prior to the Effective Date, including first arising after the Petition Date, regardless of whether the same would otherwise be a claim under said Section 101(5) of the Bankruptcy Code.

"**<u>Claims Objection Deadline</u>**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be one-hundred and eighty (180) days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein and with respect to Disputed Claims.

"**<u>Class</u>**" means one (1) of the categories of Claims and Equity Interests established under Article II hereof.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case of Aequor MGT by the United States Trustee.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

"**Creditor**" means the holder of any Claim entitled to distributions under this Plan with respect to such Claim.

"**Debtors**" mean Aequor MGT and Aequor Holdings.

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, except an Administrative Claim (or a Professional Claim), a Claim or portion thereof that:

(i)     has been disallowed by a Final Order of the Bankruptcy Court;

(ii)    is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the Bar Date; or

(iii)   is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

"**Disclosure Statement**" means the Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, either in its present form or as it may be altered, amended or modified from time to time.

"**Effective Date**" means the first Business Day fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first (1st) Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article IX hereof are satisfied.

"**Equity Interests**" means all membership interests, partnership interests, stock, securities, or other interests evidencing any ownership of any equity interest of the Debtors.

"**Estates**" means the estates created for the Debtors pursuant to Section 541 of the Bankruptcy Code and any other applicable provision thereof.

"**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within Section 365 of the Bankruptcy Code.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which:

(i)      the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or

(ii)     any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

"**Governmental Unit**" means a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.

"**IRS Priority Claim**" means the Priority Claim of the Internal Revenue Service, as asserted in Claim No. 3 filed against Aequor MGT.

"**ITX**" means Independence TX, LLC.

"**ITX Equipment**" means the personal property, including mining equipment, of Aequor MGT in the possession of ITX as of the Petition Date.

"**ITX Secured Claim**" means all claims, liens, and security interests of ITX in and to the property of the Debtors and the Estates, including all such claims, liens, and security interests acquired by ITX from 1st Source Bank, and including all prepetition and postpetition interest, default interest, attorney's fees, and claims for maintaining, storing, insuring, and safeguarding the ITX Equipment.

"**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

"**Petition Date**" means January 5, 2023.

"**Plan**" means this *Debtors' Modified Amended Joint Non-Consolidated Plan of Liquidation*, either in its present form or as it may be altered, amended or modified from time to time.

"**Priority Claim**" means any Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a Secured Property Tax Claim.

"**Pro Rata**" means proportionally based on one's portion of the whole, and not per capita.

"**Professional**" means any Person employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

"**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court.

"**Proterra Causes of Action**" means all legal and equitable claims and causes of action of Aequor Holdings against any person for the devaluation of, or harm and damage to, the value of the Proterra Interests, and the disgorgement of any benefits to any such person, including indirectly to the value of Tacora Resources, Inc. and its mine, business, and operations, existing or arising at any time prior to the Effective Date, including breach of fiduciary duty, mismanagement, self-dealing, insider trading, breach of contract, shareholder oppression, conspiracy, fraudulent transfer, unjust enrichment, restitution, dilution, devaluation, negligence, gross negligence, breach of contract, breach of the duties of loyalty and care, tortious interference with contract, tortious interference with prospective business opportunity, claims for securities fraud under federal and state statutes, including without limitation, the Securities Act of 1933 [15 U.S.C. § 77a], the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)], the Investment Advisors Act of 1940 [15 U.S.C. § 80b-6(2)] and the Texas Securities Act [TEX. REV. CIV STAT. ANN. § 581-12(A)(2)], conversion, common law fraud, common law fraudulent inducement claims for misappropriating trade secrets, including but not limited to, violations of the Defend Trade Secrets Act [18 U.S.C. § 1836], common law conspiracy, aiding and abetting, knowing participation in breach of fiduciary duty, violations of the Federal Racketeer Influenced and Corrupt Organizations Act [18 U.S.C. § 1961, et seq.], claims both common law and statutory law for which private rights of action exist for facts that would give rise to violation of the Foreign Corrupt Practices Act [15 U.S.C. § 78a, et seq.], and the like, arising under any law, including the laws of the United States of America and its member States, the laws of Canada and its member Provinces, and the Netherlands, and including as assertable against Cargill Incorporated, Black River Capital Partners Fund (Metals and Mining A) LP, Black River CPF (Metals and Mining) GP LP, Black River Capital Partners Fund (Metals and Mining B) LP, Proterra Investment Partners LP, Proterra M&M MGCA Cooperatief U.A. (Netherlands), Tacora Resources, Inc., all prior and current directors, officers, partners, members, managers, agents, and professionals of Tacora Resources, Inc. and any parent, affiliate, or subsidiary, including Jacques Perron, Phil Mulvihill, Torben Thordsen, Achille Njike, Hope Wilson, and Samuel Byrd, including as may be asserted derivatively or double derivatively, and including for violations of the automatic stay, failure to sell or monetize, entering into one-sided contracts to benefit Cargill and its affiliates or subsidiaries or to benefit other entities at the expense of Tacora and its mine and operations and to tie the same to such contracts, for the general purpose of profiting and benefiting others, related to Cargill and others, at the expense of Tacora, its business, its mine, its profitability, and its direct and indirect members and shareholders.

"**Proterra Interests**" means all equity interests of Aequor Holdings in and to Proterra M&M MGCA Cooperatief U.A., a Dutch cooperative with excluded liability, and includes all indirect interests in any subsidiary and further subsidiary thereof.  For the avoidance of doubt, the Proterra Interests do not include the Proterra Causes of Action as of the Effective Date, but do include any claim, right, or argument as to the extent (size and amount) of the Proterra Interests, to the extent that such extent is disputed, and any claim or cause of action that arises on account of the Proterra Interests after the Effective Date.

"**Rejection Damages Claim**" means the Claim in favor of a counterparty to an Executory Contract that is rejected by the Debtors, but that is not an Administrative Claim.

"**Rejection Damages Claim Bar Date**" means the day that is thirty (30) days after the Effective Date, if the Executory Contract giving rise to the Rejection Damages Claim is rejected under this Plan.

"**Released Parties**" means ITX, Aequor Aviation, LLC, David Durrett, Angel Durrett, and the affiliates, subsidiaries, members, shareholders, directors, officers, agents, managers, representatives, spouses, relatives, and successors thereof, as applicable, *provided, however,* that in no event shall "affiliate" or "subsidiary" include Proterra.

"**Remaining MGT Assets**" means the Remaining MGT Equipment and the Burro Mine.

"**Remaining MGT Equipment**" means all mining equipment other equipment, fixtures, and tangible personal property owned by Aequor MGT, other than the ITX Equipment.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtors with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtors or the Estates; or (ii) as a result of rights of setoff under Section 553 of the Bankruptcy Code.

"**Secured Property Tax Claims**" means all claims of Governmental Units for *ad valorem* taxes assessed against the property of Aequor MGT, including for real property and business personal property, arising at any time prior to or after the Petition Date, and including any such claims that may arise after the date of the Confirmation Order.

"**Settlement Funds**" means Two Million and 00/100 Dollars ($2,000,000.00) in immediately available funds to be paid in cash or wire.

"**Subordinated Claim**" means a Claim, to the extent otherwise Allowed, held, asserted or assertable by any Creditor against Aequor MGT and its Estate, and against any property of either, resulting from or payable on account of a *Redemption Promissory Note* between Aequor MGT and such Creditor, and including all such Claims of: Scott Stephenson, Tammy Geisler, Keith Dollahite, Drew Dollahite, Marvin Blethen, Horace Carter, Patrick Bailey, and Stephen Crittenden, but excluding all such Claims of Angel Durrett, which are

otherwise waived and released under this Plan.  Subordinated Claims include Claim Nos. 5, 6, 7, 8, 9 and 10 filed against Aequor MGT.

"**Subordinated Creditor**" means the holder of a Subordinated Claim.

"**Substantial Consummation**" means the date on which any of the following first happens: (i) the Settlement Funds are paid; or (ii) the Bankruptcy Court otherwise finds that substantial consummation within the meaning and operation of the Bankruptcy Code has occurred.

"**Unsecured Claim**" means any alleged Claim against the Debtors that is not secured by (or to the extent not secured by) a valid, enforceable, and unavoidable lien against any asset of the Debtors or the Estates, including any deficiency claim, which does not enjoy any administrative or priority status under the Bankruptcy Code.

"**Voting Deadline**" means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1    Classification Generally.  All Claims and Equity Interests, except Administrative Claims, are placed in Classes under the Plan.  A Claim is classified within a Class only to the extent that the Claim qualifies under the description of that Class.  A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2    Separate Voting.  Except where expressly stated differently in this Plan, each Debtor shall only pay Allowed Claims against it notwithstanding the combined classification of Claims below.  For the avoidance of doubt, each Class shall be considered separately with respect to each Debtor, to the extent that such Class is actually populated as against that Debtor, and Creditors will vote on this Plan separately per Debtor.

2.3    Unclassified Claims.  The following types of Claims are not classified under the Plan:

> Administrative Claims
> Administrative Tax Claims

2.4    Classified Claims and Interests.  Claims and Equity Interests are classified under this Plan as follows:

| | |
|---|---|
| Class 1: | Priority Claims (Excluding IRS Priority Claim) |
| Class 2: | Secured Property Tax Claims |
| Class 3: | ITX Secured Claim |
| Class 4: | Castlelake Secured Claim |
| Class 5: | IRS Priority Claim |
| Class 6: | Unsecured Claims |

Class 7:          Equity Interests

# ARTICLE III.
## PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS

3.1     <u>Administrative Claim Applications and Deadline</u>.   Holders of Administrative Claims, including Professional Claims, other than: (i) Allowed Administrative Claims as of the Effective Date; (ii) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtors' business which may be paid in the ordinary course of the Debtors' business without order of the Bankruptcy Court; and (iii) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claims Bar Date: (a) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (b) serve a copy of such application on the Debtors, the United States Trustee, and all other parties otherwise entitled to notice thereof.  Failure to file and serve such application by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged as against the Debtors, their Estates, and the property of any of the foregoing including property transferred pursuant to the Plan.  Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2     <u>Treatment of Allowed Administrative Claims</u>.     Except with respect to Administrative Tax Claims, and unless previously paid, each holder of an Allowed Administrative Claim, including a Professional Claim, shall be paid in full satisfaction, release and discharge of, and in exchange for such Allowed Administrative Claim, the amount of such Allowed Administrative Claim by each respective Debtor (except with respect to Allowed Professional Claims to be paid from the Settlement Funds), in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, no later than thirty (30) days after the Effective Date or the date that the same becomes Allowed.

3.3     <u>Treatment of Professional Claims</u>.  Professional Claims become Allowed the same as Administrative Claims in this Article III (Section 3.1 hereof), and are treated the same as Administrative Claims in this Article III (Section 3.2 hereof), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement for filing an application as provided for in Section 3.1 hereof; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 3.1 hereof and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Administrative Claims Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis; and (vi) any Professional Claim based

on payment under Section 328 of the Bankruptcy Code by commission or contingency shall be allowed and paid as provided for in the retention order of the Bankruptcy Code, without need for the filing of any application or other document with the Bankruptcy Court notwithstanding anything contained herein to the contrary.

3.4     Administrative Tax Claims.  Administrative Tax Claims, and any liens securing the same, are not affected by, prejudiced by, discharged by, or treated by this Plan, and shall survive this Plan without need for any action on the part of the holder thereof.  Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate by the respective Debtor or from the sale of collateral, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date or when otherwise payable under this Plan. Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtors or the Estates free and clear of any lien securing an Administrative Tax Claim.  All rights to contest any Administrative Tax Claim, including as may be appropriate under Section 505 of the Bankruptcy Code, are preserved and vest in the Debtor.

3.5     Section 505.  For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtors and the Estates reserve all rights under Section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said Section 505 with respect thereto.

## ARTICLE IV.
## PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS

4.1     Class 1:  Priority Claims.  In full and final satisfaction, release, and exchange of each Priority Claim, each Priority Claim, to the extent Allowed, shall be paid by each respective Debtor from its property no later than ten (10) Business Days after the Priority Claims becomes Allowed by Final Order.  Class 1 is not impaired under this Plan.

4.2     Class 2:  Secured Property Tax Claims.

(i)     Aequor Holdings.  There are no Secured Property Tax Claims as against Aequor Holdings.

(ii)     Aequor MGT.  Nothing in this Plan Allows any Secured Property Tax Claims and all property of Aequor MGT and its Estate shall remain subject to all Secured Property Tax Claims, to the extent Allowed, with the same validity, extent, and priority as is otherwise applicable, and subject to all defenses and rights as against the same.  In full and final satisfaction, release, and exchange of the Secured Property Tax Claims on Aequor MGT's real property, including any such claims arising after the Effective Date, to the extent Allowed, shall be paid in cash from the proceeds of the sale of the Burro Mine, at the closing of any such sale, including all accrued and unpaid interest and default interest at the non-bankruptcy rate thereof, including all such interest accruing after the Petition Date.  To the extent any Secured Property Tax Claims exist on Aequor MGT's business personal property, ITX shall assume and pay for those claims on the Effective Date, including all accrued and unpaid interest and default interest at the non-bankruptcy rate therefor, including all such interest accruing after the Petition Date, in connection with Aequor MGT's transfer of the ITX Equipment to ITX ("ITX Property Tax Claim").  Class

2 is impaired under this Plan.

4.3     Class 3: ITX Secured Claim.  The ITX Secured Clam is hereby Allowed as a fully Secured Claim in the following amount: (i) Six Million Five Hundred Nineteen Thousand Six Hundred Twenty-Nine and 00/100 Dollars ($6,519,629.00) as of the Petition Date; plus (ii) all postpetition interest, default interest, and attorney's fees.  In full and final satisfaction, release, and exchange of the ITX Secured Claim and any other Claim asserted or assertable by ITX against the Debtors and the Estates, Aequor MGT shall transfer the ITX Equipment and the Remaining MGT Equipment to ITX free and clear of all liens, claims, interests, and encumbrances, under Section 363(f) of the Bankruptcy Code, by way of bill of sale executed and delivered within five (5) Business Days of the Effective Date, without recourse or warranty of any kind.  ITX shall remove all such ITX Equipment, including the Remaining MGT Equipment, at its sole burden and expense, from the Burro Mine, promptly after the Effective Date.  For the avoidance of doubt, any lien of ITX against the Burro Mine is deemed satisfied and paid in full under this Plan.  Class 3 is impaired under this Plan.

4.4     Castlelake Secured Claim.

(i)     Allowance.  The Castlelake Secured Claim is hereby Allowed as a Secured Claim against both Debtors and Estates, and any Avoidance Actions or surcharge claims that the Debtors and Estates could assert against Castlelake are hereby waived and released. The Castlelake Secured Claim is Allowed in the amount of Six Million Four Hundred Thousand and 00/100 Dollars ($6,400,000.00) as against Aequor Holdings and its Estate, and in an undetermined amount as against Aequor MGT and its Estate, but such amount is estimated at Three Million and 00/100 Dollars ($3,000,000.00) solely for purposes of this Plan and voting on this Plan and without prejudice to its final amount.

(ii)    Aequor Holdings.  In full and final satisfaction of the Castlelake Secured Claim as against Aequor Holdings and its Estate, and as a condition precedent to the Effective Date, Aequor Holdings shall transfer all right, title, and interest it has in and to the Proterra Interests to Castlelake or its designee free and clear of all liens, claims, interests and encumbrances under section 363(f) of the Bankruptcy Code, and notwithstanding any contractual or statutory provision to the contrary, upon such documents or instruments as are reasonably agreeable to Castlelake including, without limitation, such additional consents and/or other documents as Castlelake may reasonably require from third parties to accomplish the transfer of the Proterra Interests.  If such documents cannot be obtained to Castlelake's satisfaction, Castlelake may elect to disclaim its interests in the Proterra Interests, in which case the Proterra Interests shall not be conveyed to Castlelake, and shall instead be retained by Aequor Holdings subject to the liens thereof of Castlelake. Notwithstanding the foregoing, on or before the Effective Date, Castlelake may, by written notice to the Debtors, elect to disclaim its entitlement to the Proterra Interests, in which case the Proterra Interests shall not be conveyed to Castlelake, and shall instead be retained by Aequor Holdings, subject to the liens thereof of Castlelake.  Should Castlelake disclaim its entitlement to the Proterra Interests, or should Castlelake not receive documentation satisfactory to it to transfer the Proterra Interests, then Castlelake's Secured Claim as against Aequor Holdings shall be treated in all respects as an Unsecured Claim entitled to the treatment afforded to Allowed Unsecured Claims.

(iii)   <u>Aequor MGT</u>.   Notwithstanding anything in this Plan to the contrary, Castlelake shall retain a first priority lien and security interest against the Burro Mine, subject only to superior *ad valorem* tax liens, to secure the Castlelake Secured Claim.   In full and final satisfaction of the Castlelake Secured Claim as against Aequor MGT and its Estate, Aequor MGT shall sell the Burro Mine and pay the proceeds thereof to Castlelake as provided for in Section 5.5 hereof.

(iv)   <u>Contractual Subordination</u>.   Nothing in this Plan alters, waives, or prejudices any contractual subordination right or claim that Castlelake may have against any other Creditor.

(xi)   <u>Impairment</u>.   Class 4 is impaired under this Plan.

4.5   <u>Class 5: IRS Priority Claim</u>.   Nothing in this Plan allows the IRS Priority Claim, and all objections and defenses thereto are transferred to and vest in the Debtors.   In full and final satisfaction, release, and exchange of the IRS Priority Claim, to the extent Allowed, Aequor MGT shall pay the same, in cash, no later than ten Business Days (10) days after the same becomes Allowed by Final Order.   Class 5 is impaired under this Plan.

4.6   <u>Class 6: Unsecured Claims</u>.

(i)   <u>Aequor Holdings</u>.   In full and final satisfaction of Unsecured Claims against Aequor Holdings and its Estate, each Unsecured Claim, to the extent Allowed, shall receive a pro-rata share of any distributions or payments from the Proterra Causes of Action as potentially liquidated and monetized pursuant to Section 5.6 hereof (and subject to the sharing in the proceeds thereof as specified in said Section) and from the liquidation by Aequor Holdings of any other property of Aequor Holdings or its Estate remaining after any sales, transfers, or releases of its property under this Plan.

(ii)   <u>Aequor MGT</u>.   In full and final satisfaction of Unsecured Claims against Aequor MGT and its Estate, each Unsecured Claim, to the extent Allowed, shall receive a pro-rata share of any distributions or payments from the liquidation by Aequor MGT of all property of Aequor MGT and its Estate remaining after any sales, transfers, or releases of its property under this Plan, including any of the Settlement Funds remaining after payment of any Allowed Priority Claims, Administrative Claims, and IRS Priority Claim.

(iii)   <u>Impairment</u>.   Class 6 is impaired under this Plan.

4.7   <u>Class 7: Equity Interests</u>.   All Equity Interests in the Debtors are retained as of the Effective Date for the sole purpose of winding down and liquidating the Debtors.   In no event shall any dividends, distributions, or other payments on account of Equity Interests be made under this Plan or from such liquidation.   Class 7 is impaired under this Plan.

# ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1   <u>No Consolidation</u>.   The Debtors and the Estates are not substantively consolidated under this Plan and shall remain separate.   Notwithstanding the foregoing, the Debtors and the

Estates shall be jointly and severally liable for Professional Claims, to the extent Allowed; *provided, however,* that Professional Claims shall be paid by each respective Debtor from the Settlement Funds in the percentages provided for in section 5.2 below.

5.2     <u>Plan Funding</u>.  As a condition of the Effective Date, and in addition to any other consideration provided in this Plan, one or more of the Released Parties shall pay to the Debtors the Settlement Funds, which, for the avoidance of doubt, shall be free and clear of all liens, claims, interests and encumbrances of all Creditors.  The Settlement Funds shall be allocated between the Debtors as follows: 20.00% to Aequor Holdings and 80.00% to Aequor MGT.  The Plan shall otherwise be funded through various sales of assets and liquidation of causes of action as otherwise provided for in this Plan.

5.3     <u>Releases</u>.  On the Effective Date, and automatically, without need for further order, document, or agreement, the following compromises, releases, and waivers shall take effect.

(i)     <u>Estate Releases of Released Parties</u>.  Each Debtor, on behalf of itself, its Estate, and any of its Creditors able to claim through it, hereby forever releases and discharges each of the Released Parties from any and all claims, causes of action, debts, and rights which each such Debtor and Estate may hold as of the Effective Date, whether known or unknown, and whether arising in tort, contract, law, or equity, including all Avoidance Actions and all claims and causes of action related to the ITX Equipment.

(ii)     <u>Estate Releases of Castlelake</u>.  Each Debtor, on behalf of itself, its Estate, and any of its Creditors able to claim through it, hereby forever releases and discharges Castlelake, and all affiliates, subsidiaries, parents, directors, officers, managers, members, employees, representatives, and agents thereof from any and all claims, causes of action, debts, and rights which each such Debtor and Estate may hold as of the Effective Date, whether known or unknown, and whether arising in tort, contract, law, or equity, including all Avoidance Actions.  For the avoidance of doubt, the Claims asserted by Castlelake against the Debtors (Claim No. 16 against Aequor MGT and Claim Nos. 3 and 4 against Aequor Holdings), shall be Allowed in the amounts asserted therein jointly and severally against the Debtors and the Estates (but without duplication in the case of Aequor Holdings), including as Secured Claims in the amounts otherwise provided for (or estimated) under this Plan and as Unsecured Claims for all other asserted amounts.

(iii)     <u>Insider Releases of Debtors</u>.  ITX, David Durrett, Angel Durrett, and Aequor Aviation, LLC, hereby release and waive their claims against the Debtors, including Claim Nos. 12, 13, 14, and 15 filed against Aequor MGT.

(iv)     <u>Non-Debtor Releases</u>.  As a condition to the Effective Date, ITX and David Durrett, on the one hand, and Castlelake, on the other hand, shall each execute and deliver releases of all potential claims and causes of action that the one may have against the other, in form and substance agreed to by and between Durrett and Castlelake.

5.4     <u>Vesting of Assets</u>.  On the Effective Date, and automatically, without need for further order, document, or agreement, the property of each Debtor's Estate shall vest in such Debtor free and clear of all liens, claims, interests and encumbrances, except only to such liens, claims, interests and encumbrances as preserved or created under this Plan.

5.5     Sale of Burro Mine.

(i)     Sale.  Commencing as soon as practical after the Effective Date, if not already commenced by then, Aequor MGT shall place and list the Burro Mine for sale and shall, in good faith, engage in a sales process to sell the Burro Mine.  At all times during the same, Aequor MGT shall: (a) keep Castlelake reasonably apprised of any developments concerning such sale, including by timely forwarding any offers, letters of intent, term sheets, or other expressions of interest for the Burro Mine; (b) keep Castlelake reasonably apprised of the potential retention brokers, investment bankers, or other professionals proposed to be engaged for such sale, and their proposed compensation, and shall take Castlelake's reasonable views concerning the same into account; (c) seek and obtain Castlelake's approval of any listing or offering price, or any adjustment to the same; and (d) otherwise reasonably cooperate with Castlelake with respect to such sale, provided that the same shall in no event include providing any privileged information to Castlelake.

(ii)     Retention of Liens.  Notwithstanding anything contained herein to the contrary, the Burro Mine shall re-vest in Aequor MGT subject to: (i) all *ad valorem* tax claims and all liens against the same, including Secured Property Tax Claims secured by the real property, and expressly excluding the ITX Property Tax Claim; and (ii) the Castlelake Secured Claim and all liens securing the same.

(iii)     Credit Bid Rights.  For the avoidance of doubt, all rights to credit bid the Castlelake Secured Claim concerning any sale of the Burro Mine are preserved notwithstanding anything contained to the contrary in this Plan, but subject to all superior *ad valorem* claims and liens against the real property of the Burro Mine.

(iv)      Carveout for Fees and Expenses.  The Debtors and Castlelake shall agree to a carveout of the Castlelake Secured Claim for: (a) ordinary and customary transaction fees and expenses for any closing of any sale of the Burro Mine, including inspections, escrow, and title fees and expenses; (b) broker fees earned upon any closing of any sale of the Burro Mine; and (c) reasonable fees and expenses of any other professionals engaged by Aequor MGT with respect to any sale of the Burro Mine.

(v)     Payment of Net Proceeds.  At the closing of any sale of the Burro Mine, the proceeds of such sale shall be paid: (a) first, to pay all *ad valorem* tax claims and tax liens against the same (except to the extent assumed by any buyer); and (b) second, to Castlelake, less the carveout provided for above.

(vi)     Surrender.  If Aequor MGT: (a) fails to close on a sale of the Burro Mine no later than December 31, 2024, unless such date is extended by written agreement of Castlelake; or (b) Castlelake determines in its reasonable discretion that Aequor MGT is failing to adequately and properly market the Burro Mine or entertain offers to purchase the same, then, upon request by Castlelake, Aequor MGT shall execute and deliver to Castlelake or its designee a deed in lieu of foreclosure transferring the Burro Mine without warranty of title or otherwise, and subject to all superior *ad valorem* claims and liens against the Burro Mine.

5.6     Liquidation of Proterra Causes of Action.

(i)     Retention and Prosecution.  Notwithstanding anything contained herein to the contrary, the Proterra Causes of Action are retained and preserved under this Plan and re-vest in Aequor Holdings on the Effective Date, which may be litigated and liquidated by Proterra Holdings in its sole discretion.  Aequor Holdings may, but is not obligated to, litigate, liquidate, and collect on the Proterra Causes of Action to finality, at its sole expense and burden, from contributions or other methods of litigation funding by and from David Durrett.

(ii)     No Defense Based on Assignment of Proterra Interests.  Without admitting the existence or correctness of any such defense, no defendant regarding the Proterra Causes of Action shall have any defense, affirmative defense, or other right based on the transfer of the Proterra Interests to Castlelake, the ownership of the Proterra Interests and the Proterra Causes of Action being severable and separately transferrable and monetizable under the Bankruptcy Code.

(iii)     Sharing of Proceeds.  In exchange for funding any litigation of the Proterra Causes of Action, David Durrett and one or more of his designees shall be paid seventy percent (70%) of the net proceeds of the Proterra Causes of Action, and Castlelake shall be paid twenty-four percent (24%) of such net proceeds on account of its Unsecured Claim against Aequor Holdings, and holders of Subordinated Claims against Aequor MGT shall be paid the remaining six percent (6%) of such net proceeds *pro-rata* between themselves. For the avoidance of doubt, no potential Creditor of Aequor Holdings whose claim arises after the Effective Date, or any other person, shall have any interest in the Proterra Causes of Action, except as the same may be voluntarily transferred by David Durrett and/or Castlelake.  As used herein, "net proceeds" shall mean any and all proceeds, including any proceeds from any defendant, party, insurance carrier, or other source, used to pay, settle, or acquire any of the Proterra Causes of Action (but not from any disposition of the Proterra Interests), less all actual attorney's fees, expert witness fees, other fees, and expenses of investigation, mediation, and litigation, including contingency fees, appellate fees and expenses, and fees and costs of collection.

(iv)     Reasonable Cooperation.   Aequor Holdings shall keep Castlelake reasonably apprised of the status of any litigation or other proceeding regarding or involving the Proterra Causes of Action, provided that, for the avoidance of doubt, this shall not include any privileged information.

5.7     Executory Contracts.  On the Effective Date, and without need for further order, document, or action, all Executory Contracts shall be deemed rejected, to the extent not rejected prior thereto.  Any Rejection Damages Claim shall be filed by the Rejection Damages Claims Bar Date and shall be treated as a Class 7 Claim under this Plan.

5.8     Automatic Stay.  The automatic stay provided by Section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the injunction provisions of this Plan and the Bankruptcy Code shall control.

5.9     Rights Under Section 505.    All Secured or Priority Claims for taxes by Governmental Units and any claim to a refund regarding the same or other relief regarding the same shall remain subject to Section 505 of the Bankruptcy Code.  The Debtors may seek relief pursuant to Section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any claim for taxes by a Governmental Unit.

5.10    Dissolution of Committee.    On the Effective Date, the Committee shall be automatically dissolved and shall be terminated, without prejudice to the assertion of any Administrative Claim or Professional Claim as otherwise provided in this Plan.

5.11    Corporate Existence of Debtors.    The Debtors shall remain in existence after the Effective Date for the purpose of winding down their affairs, liquidating their assets, and effectuating this Plan, including the prosecution of the Proterra Causes of Action, with this Plan satisfying all applicable nonbankruptcy law regarding the same, including all notice and other liquidation and wind down provisions and procedures, and the Debtors shall terminate their existence and file such final tax returns, and issue such final tax documents, as appropriate under applicable nonbankruptcy law evidencing the foregoing, upon the conclusion of such winding-down and liquidation.  For the avoidance of doubt, all tax attributes of the Debtors shall remain property of the Debtors.  For the further avoidance of doubt, in no event shall the dissolution or termination of the Debtors as corporate entities affect, prejudice, or limit any rights or property administered pursuant to this Plan.

5.12    Management of the Debtors After Confirmation.    After the Effective Date, the Debtors shall be solely managed by David Durrett and Dax Atkinson, who shall receive no compensation for doing so.

5.13    Plan Supplements.    Any supplement contemplated by this Plan shall, when filed with the Bankruptcy Court, automatically become part of the Plan.

5.14    Incorporation of Exhibits.    Any exhibits to this Plan, or any supplements to this Plan filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

5.15    Retention and Preservation of Causes of Action.    Unless expressly and specifically released in this Plan or through any order entered in the Bankruptcy Case, all Causes of Action, assertible by the Debtors or the Estates, including without limitation the Proterra Causes of Action, are reserved and preserved under this Plan and transfer to and vest in the Debtors as otherwise provided for in this Plan, except solely where any Cause of Action is expressly released in this Plan.

5.16    Insurance.    To the extent that any insurance policy or agreement related to or ancillary to an insurance policy is an Executory Contract, and notwithstanding anything contained in such contract to the contrary, all such insurance Executory Contracts are assumed and policies covering any insured loss arising prior to the Effective Date, and all rights related thereto, are assigned to and vest in the Debtors, notwithstanding any contractual provision or limitation to the contrary.

5.17    <u>Enforcement of Subordination Agreements</u>.  For purposes of their distributions as holders of Class 6 Unsecured Claims (but not for any other purpose under this Plan), and pursuant to those certain *Subordination Agreements* between Castlelake and each Subordinated Creditor, any such distribution otherwise payable hereunder by Aequor MGT on account of any Subordinated Claim, to the extent that any such Subordinated Claim is Allowed, shall instead be paid by Aequor MGT to Castlelake for application towards Castlelake's Class 6 Unsecured Claim, up to the full Allowed amount of such Castlelake Class 6 Unsecured Claim.  To the extent that a Subordinated Creditor holds a Claim that is not a Subordinated Claim, this section 5.17 of the Plan shall not apply to any such other Claim.

5.18.    <u>Settlement with Aequor MGT Committee</u>.  In resolution of the Committee's potential objection to the Plan, its motion to convert the Bankruptcy Case, and the Debtors' motion to dissolve the Committee:

(i)     $30,000.00 of the first Settlement Funds payable to Aequor MGT (but after any of the same are used to pay Administrative Claims or Priority Claims) shall be paid to unsecured trade creditors of Aequor MGT, in addition to their distribution under section 4.6(ii), which, for the avoidance of doubt, does not include payment on any Subordinated Claim.

(ii)     The next $20,000.00 of said Settlement Funds shall be paid *pro-rata* to non-insider holders of Subordinated Claims against Aequor MGT, notwithstanding section 5.17 of the Plan.  For the avoidance of doubt, and for purposes of this Section only, Angel Durrett, Scott Stephenson, and Tammy Geisler are deemed insiders.

(iii)     The Debtors and Castlelake waive any right to object to the allowance of any fees and expenses of the Committee's professionals which, for the avoidance of doubt, shall remain subject to allowance and payment as otherwise provided for by law and in this Plan.

(iv)     The Committee shall withdraw its motion to convert the Bankruptcy Case.

(v)     The Debtors shall withdraw their motion to dissolve the Committee.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF PLAN

6.1.    <u>Impairment Controversies</u>.  If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

6.2.    <u>Classes and Claims Entitled to Vote</u>.  Classes 1 and 5 are not impaired under this Plan and is deemed to have accepted this Plan.  All other Classes are impaired under the Plan and are entitled to vote on the Plan.

## ARTICLE VII.
## TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

7.1.    Objection Deadline.  Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be filed by the Claims Objection Deadline or be forever barred and waived.  Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim.  Provided that a claim objection is filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate.  Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to.  Any Disputed Claim may be litigated to Final Order.  Debtors may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date.  Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late filed Claim than such Creditor has.

7.2.    Creditor Response to Objection.  With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to Creditor of the same.

7.3.    No Waiver of Right to Object.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair any right to object to any Claim.  A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

7.4.    Miscellaneous Provisions for Disputed Claims.  Nothing contained in this Plan, the Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely proof of Claim, and the holder of such Disputed Claim who is required to file a proof of Claim and fails to do so, shall receive no distribution through the Plan and the Claim shall be discharged, unless this Plan specifically and explicitly provides otherwise.   The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable.  The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim, except with respect to any potential personal injury or wrongful death claim.  Exclusive venue for any proceeding involving a Disputed Claim shall be in the Bankruptcy Court or District Court in the Eastern District of Texas, Tyler Division, unless the Bankruptcy Court or District Court withdraw the reference, transfer a proceeding, or abstain.

Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court.

7.5.    Allowance of Disputed Claims.  All Disputed Claims shall be liquidated and determined as follows:

7.5.1.    Application of Adversary Proceeding Rules.  Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules.  However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings.  Debtors may, at their election, make and pursue any objection to a Claim in the form of an adversary proceeding.

7.5.2.    Scheduling Order.  Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order may be entered as to each objection to a Disputed Claim upon the filing of a response thereto by the holder thereof.  The Debtors may tender a proposed scheduling order with each objection and include a request for a scheduling conference for the entry of a scheduling order.

7.5.3.    Mediation.  The Bankruptcy Court may order the parties to mediate in connection with any objection to a Disputed Claim.  The Debtors may include a request for mediation in its objection, and request that the Court require mediation as part of the scheduling order.

7.5.4.    Substantial Consummation.  All distributions of any kind made to any of the holders of Allowed Claims after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order issued under the Bankruptcy Rules.

7.6    Amendments to Claims; Claims Filed After the Confirmation Date.  Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Debtor.

**ARTICLE VIII**
**EFFECTS OF PLAN CONFIRMATION**

8.1    No Discharge.  The Debtors do not receive a discharge under this Plan.

8.2    Plan Injunction.  Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors, the Estates, or any of their property, on account of a Claim or Debt that is treated under this Plan, except solely as permitted under this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by

any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, the Estates, or their property, on account of a Claim or Debt that is treated under this Plan, except solely as permitted under this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtors, the Estates, or their property, on account of a Claim, interest, lien, or Debt that is treated under this Plan, except solely as permitted under this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtors, the Estates, or their property, with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, from appealing the Confirmation Order, or from filing a continuation statement to continue in effect a perfected security interest that survives the Effective Date.

8.3    <u>Free and Clear Injunction</u>.  Where any property is transferred "free and clear" of liens, claims, interests, and encumbrances under this Plan, all Creditors and persons are permanently enjoined and prohibited from seeking to assert any Claim, lien, interest, or right that is asserted or assertable against the Debtors, the Estates, or their property, against such transferred property, or against the holder thereof on account of such Claim, lien, interest, or right; *provided, however,* that nothing in this Plan enjoins, prohibits, or prejudices any direct claim that any such Creditor or person has against such third party, including on account of any guarantee or alleged fraud claim.

8.4    <u>No Liability for Solicitation or Participation</u>.  Pursuant to Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

8.5    <u>Exculpation</u>.   Except as specifically provided for herein, on and after the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtors or the Estates may have or be able to assert against: (i) any member of the board, officer, or manager of the Debtors;  (ii) Munsch Hardt Kopf & Harr, P.C., its attorneys, employees, officers, agents, and shareholders; and (iii) the Committee, and its members, attorneys, employees, officers, agents, and shareholders, solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case, the Disclosure Statement, or the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; *provided, however,* that nothing in this Plan releases any claim against any of the foregoing for gross negligence or intentional act.

# ARTICLE IX
## CONDITIONS PRECEDENT

9.1.  <u>Conditions Precedent to Confirmation and Effectiveness of Plan</u>.  The Plan shall not become effective until the following conditions shall have been satisfied: (i) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) the Settlement Funds shall have been paid to the Debtors; (iv) all other specific condition precedents contained in this Plan shall have been satisfied; and (v) a notice of the Effective Date shall have been filed by the Debtors in the Bankruptcy Case.

9.2.  <u>Non-Occurrence of the Effective Date</u>.  If the Plan is confirmed but the Effective Date does not occur by February 29, 2024, unless such date is extended by the Debtors: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtors and other parties-in-interest will be returned to the same position as if confirmation had not occurred.  The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

9.3.  <u>Notice of the Effective Date</u>.  On or before three (3) Business Days after occurrence of the Effective Date, the Debtors shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

9.4.  <u>Modification of this Plan</u>.  The Debtors may alter, amend or modify this Plan under Section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Substantial Consummation of this Plan, the Debtors or any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan and so long as the protections under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan.

9.5.  <u>Revocation or Withdrawal of this Plan</u>.  The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Debtors revoke or withdraw this Plan prior to the Confirmation Date, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

9.6     <u>Inadmissible Settlement Offer</u>.  If the Effective Date does not occur as otherwise provided for in this Plan, the Plan shall be treated as a settlement offer under Federal Rule of Evidence 408 and shall not be used as evidence to prove any alleged liability of the Debtors or anyone else.

**ARTICLE X**
**RETENTION OF JURISDICTION AND CLAIMS**

10.1.    <u>Jurisdiction of Bankruptcy Court</u>.     Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

10.1.1.      To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

10.1.2.      To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

10.1.3.      To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

10.1.4.      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

10.1.5.      To construe and to take any action to enforce this Plan and the Confirmation Order;

10.1.6.      To issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including the enforcement of any release and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order, and to protect any person and its property from any action or threatened action taken in violation of any provision of this Plan;

10.1.7.      To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

10.1.8.      To hear and determine all applications for Administrative Claims;

10.1.9.      To hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

10.1.10.      To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

10.1.11.      To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

10.1.12      To hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property;

10.1.13.      To enter the Final Decree upon proper request;

10.1.14.      To command and enjoin any Creditor or Person to comply with the transfer and vesting of property of the Debtors and the Estates free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan, or to order that any other Person may do to the same with the same full force and effect;

10.1.15.      To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtors or the Estates, including, without limitation, matters concerning federal, state, local and other taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

10.1.16      To hear and determine any Avoidance Actions;

10.1.17      To hear and determine all matters affecting the governance, administration, identity, replacement, compensation, and other internal matters of the Debtors; and

10.1.18      To adjudicate, try, and liquidate all Causes of Action transferred to the Debtors, and to otherwise assist the Debtors with monetizing all assets and collecting on all Causes of Action.

10.1.19      To hear, determine, and enforce any Bankruptcy Rule 2004 examination ordered prior to the Effective Date, or to hear and grant a Bankruptcy Rule 2004 examination or motion filed after the Effective Date, including any subpoena issued in connection therewith.

10.2.    Failure of Bankruptcy Court to Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

10.3.   No Creation of Jurisdiction.   This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists. For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, withdrawal of the reference, or otherwise, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

10.4.   Retention and Preservation of General Rights.   Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Debtors and the Estates retain any and all rights, property, and interests, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund belonging to the Debtors; and (vii) claims and causes of action against any Creditor or person whatsoever, including for affirmative relief and to reduce any liability.

10.5   Retention and Preservation of Specific Rights.   Without limiting the effectiveness or generality of the foregoing, and unless expressly and specifically waived or released in this Plan or through any order entered in the Bankruptcy Case, and out of an abundance of caution, the Debtors and the Estates specifically reserve and retain the following claims and causes of action, which shall in no way be extinguished, released, or prejudices as a result of the confirmation of this Plan:

(i)   the Avoidance Actions;

(ii)   the Proterra Causes of Action;

(iii)   all other Causes of Action, and all other claims and causes of action of the Debtors or the Estates, whether known or unknown, scheduled or unscheduled, asserted or unasserted;

(iv)   all claims and causes of action to subordinate any Claim;

(v)   all objections to Professional Claims and rights to disgorge or recover any prepetition or postpetition payment to any professional; and

(vi)   all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to Section 505 of the Bankruptcy Code.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1.    Payment of Statutory Fees.  All fees payable pursuant to Section 1930 of Title 28 of the United States Code arising prior to or after the Effective Date shall be timely paid by the Debtors from the proceeds of the Settlement Funds, subject to the rights of the Debtors to contest the same.

11.2.    Exercise of Liens.  Any lien preserved or granted in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

11.3.    No Admissions.   Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

11.4.    Plan Controls. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

11.5.    Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

11.6.    Substantial Consummation of Plan.  The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

11.7.    Successors and Assigns.  The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

11.8.    Severability.   Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtors may, in their discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

11.9.    Notices and Distributions.  On and after the Effective Date, all notices, requests and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtors.  Any holder of a

Claim may designate another address for the purposes of Section 11.9 hereof by providing the Debtors written notice of such address, which notice will be effective upon receipt as otherwise appropriate.

11.10. <u>Unclaimed Property</u>.  If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Respective Debtor, including to be redistributed as provided for in this Plan.

11.11. <u>Binding Effect</u>.  The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest, as provided for by the Bankruptcy Code.

11.12. <u>Withholding and Reporting</u>.  In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements.

**ARTICLE XII**
**<u>CONFIRMATION REQUEST</u>**

The Debtors hereby requests confirmation of this Plan pursuant to Section 1129(a) of the Bankruptcy Code or, if this Plan is not accepted by each of those Classes of Claims entitled to vote, Section 1129(b) of the Bankruptcy Code.

DATED: FEBRUARY 2, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: _/s/ Davor Rukavina_____
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Thomas D. Berghman, Esq.
    Texas Bar No. 24082683
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

**ATTORNEYS FOR THE**
**DEBTORS-IN-POSSESSION**